IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
|---|---|
| v. | 1:18-CR-160-SCJ-JKL |
| SANDRA J. STEVENS | |

## FINAL REPORT AND RECOMMENDATION

Defendant Sandra J. Stevens is charged in this case with mail fraud and federal program theft, arising from Stevens's alleged use of public funds to purchase goods and services for her own private benefit while she was a Special Agent with the Georgia Bureau of Investigation ("GBI"). [Doc. 1.] Pending before the Court is Stevens's Motion to Dismiss the Indictment. [Doc. 18.] The government has filed a response [Doc. 21], and Stevens has filed a reply [Doc. 23]. For the following reasons, it is **RECOMMENDED** that Stevens's motion to dismiss be **DENIED**. [Doc. 18.]

## I.     BACKGROUND

In her motion to dismiss the indictment, Stevens presents numerous arguments as to why the Court should dismiss the indictment, but the gist of her motion is that the instant federal prosecution is unfair or improper because she was

already convicted and sentenced in state court for the conduct at issue in this case. The following summary of the state court proceedings is drawn primarily from Stevens's description of those proceedings in her motion to dismiss and the state court records the parties have provided the Court.  The Court also refers to facts alleged in the indictment for context.

### A.    State court proceedings

Stevens was a Special Agent with the GBI with more than 20 years' experience.  [Doc. 1 ¶ 3; Doc. 18 at 6.]  She served in several leadership and supervisory positions and had been commended for her work.  [Doc. 1 ¶ 4; Doc. 18 at 9.]  The GBI also had issued Stevens a credit card under Georgia's Visa Purchasing Card ("P-Card") program for official business purchases like office supplies.  [Doc. 1 ¶¶ 5-6.]

In August 2016, the Georgia Department of Administrative Services, Office of the Inspector General and the Office of the Attorney General made the GBI aware of irregularities with Stevens's P-Card transactions.  [Doc. 18 at 6.]  A subsequent investigation revealed hundreds of transactions, totaling over $60,000, that the state believed Stevens ordered for her own personal use and had shipped

2

directly to her home.[1]  [*Id.*]  The GBI arrested Stevens on August 31, 2016, and upon her release on bond, she gathered all the property she had purchased for her own personal use using the P-Card and delivered it to GBI headquarters.  [*Id.* at 7.]  Stevens voluntarily resigned her position at the GBI and cooperated with the state prosecutor in an audio-recorded interview.  [*Id.*]

On September 21, 2017, a grand jury seated in DeKalb County, Georgia, returned an indictment against Stevens, charging her with racketeering, O.C.G.A. § 16-14-4(a), and violation of oath by a public officer, O.C.G.A. § 16-10-1.  [Doc. 21-1 at 2-24.[2]]  Stevens entered into plea negotiations with the state, but those efforts were ultimately unsuccessful.  [*See* Doc. 18 at 8.]  The state offered Stevens a total four-year custodial sentence, but Stevens felt that a noncustodial sentence was appropriate.  During plea negotiations, the state prosecutor also told Stevens

---

[1] Stevens's position is that many of the transactions identified by the investigation were purchases of equipment and other purchases associated with GBI agents' participation in "Mud Runs" to raise money for charitable causes. [Doc. 18 at 6.]  She argues in her opening brief that only $19,000 of the purchases were for her own personal benefit, [*id.* at 9], and in her reply that $39,000 were for her own personal benefit, [Doc. 23 at 15].

[2] Citations to the exhibits containing state court records refer to the page numbers automatically generated by CM/ECF.

3

that the case could have been prosecuted in federal court, but because of her cooperation, the state was prosecuting the case. [*Id.*]

On December 11, 2017, Stevens entered a non-negotiated guilty plea to both counts in the indictment. [Doc. 20 at 4.] At sentencing that same day, the prosecutor argued that the state court should impose an eight-year sentence. [Doc. 18 at 8.] Stevens asserts that the state prosecutor pursued a custodial sentence because such a sentence would prevent her from receiving any retirement benefits. [*Id.* at 9.]

Ultimately, the state court found that a sentence of probation was appropriate, at least in part, because of Stevens's long career in state service. [Doc. 18 at 8-9.] The state court imposed a sentence of 10 years' probation, with the first six months at the most restrictive level of probation. [*Id.*; Doc. 20 at 4, 6, 8.] The state court also ordered Stevens to serve community service, to surrender her POST certification to work as a law enforcement officer, and not to work as a state employee. [Doc. 18 at 9-10; Doc. 20 at 6, 8.] The state court imposed restitution of $60,284.04 as a special condition of Stevens's probation, with the first $40,000 due within 30 days of sentencing, and her probation would terminate upon payment of the full amount. [Doc. 18 at 9; Doc. 20 at 6, 10.] Stevens timely made the

4

$40,000 payment and paid full restitution within 60 days.   [Doc. 18 at 9.] According to Stevens, after the state court imposed a noncustodial sentence, the GBI was "infuriated" and "publicly implied that 'this was not over.'"   [*Id.* at 11.]

**B.      Initiation of the federal prosecution against Stevens**

On March 8, 2018, one of the Assistant U.S. Attorneys assigned to this case sent Stevens a letter indicating that the government "had received credible information from the Georgia Bureau of Investigation establishing that [she had] committed the crimes of wire fraud and federal program theft."   [Doc. 20 at 11.] On May 8, 2018, a federal grand jury returned a seven-count indictment against Stevens.   [Doc. 1.]   In Counts One through Four of the indictment, Stevens is charged with mail fraud, 18 U.S.C. § 1341, and in Counts Five through Seven, she is charged with federal program theft, 18 U.S.C. § 666.   [*Id.*]

The government indicates that it made the decision to seek additional charges against Stevens "without any requests from the GBI or the Georgia Attorney General's Office."   [Doc. 21 at 3.]

## II.   DISCUSSION

In her motion to dismiss, Stevens chiefly argues that the government's decision to pursue a successive prosecution after her state convictions is vindictive

and violates its own policies about successive federal prosecutions following state charges.   [*See* Doc. 18.]   She contends that, generally, dual and successive prosecutions can be unfair to defendants and notes that the government has implemented a policy on dual and successive prosecutions to safeguard against such unfairness.   [*Id.* at 11-16.]   In Stevens's view, the government's decision to prosecute her violates its own policy because there is no substantial federal interest in this case, aside from the bare minimum federal jurisdictional hook, because "most . . . crimes can somehow be linked to the Internet."[3]   [*Id.* at 16-17.]   She also argues that there is no substantial federal interest left unvindicated by her state prosecution, and the government is only interested in punishing her because the state court did not impose a prison sentence.   [*Id.* at 16.]

Stevens further argues that the government's decision to charge her federally puts her twice in jeopardy for the same offense and is vindictive, selective, and improperly motivated by a feeling that she was not sufficiently punished in state court, notwithstanding the fact that she already has made full restitution to the GBI. [Doc. 18 at 2, 17-20.]   As to selective prosecution, she contends that she is "the

---

[3] Stevens is charged with mail fraud, not wire fraud.  It appears that she is referring to the Internet because the government previously contemplated charging her with wire fraud.

only defendant selected by the GBI to be prosecuted because a jail sentence was not granted at state level." [*Id.* at 20; *see also id.* at 5.] She also argues that the successive federal prosecution, and the dual-sovereignty doctrine in general, run afoul of the principle of popular sovereignty because her state prosecution vindicated the interests of the people. [*Id.* at 20-21.]

Stevens briefly argues that the federal prosecution is an attempt to inflict cruel and unusual punishment on her. [Doc. 18 at 19.] She notes that she has a history of poor mental health and has submitted a letter from her therapist asking the Court to dismiss the indictment for the sake of her mental health and the health of her children. [*Id.* at 18-19; Doc. 20 at 12-13.]

Finally, in the style of the motion, Stevens also argues that Sections 666 and 1341 are void for vagueness, and the indictment fails to charge an offense. [Doc. 18 at 1; *see also id.* at 4.] Stevens does not further explain those contentions, except to note that she believes the indictment fails to state an offense because the charges in the indictment are vindictive. [*Id.* at 6.]

### A.   The federal indictment does not violate the Double Jeopardy Clause of the Fifth Amendment.

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offen[s]e to be twice put in jeopardy of life

or limb."   U.S. Const. amend V.   "Specifically, the Double Jeopardy Clause protects against (1) 'a second prosecution for the same offense after acquittal'; (2) 'a second prosecution for the same offense after conviction'; and (3) 'multiple punishments for the same offense.'"   *United States v. Votrobek*, 847 F.3d 1335, 1339 (11th Cir. 2017) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)).   For purposes of double jeopardy, two statutory offenses are not the same if each requires proof of an element the other does not.   *United States v. Hassoun*, 476 F.3d 1181, 1185 (11th Cir. 2007) (citing, *inter alia*, *Blockburger v. United States*, 284 U.S. 299 (1932)).   Moreover, as Stevens acknowledges in her motion to dismiss, the Fifth Amendment's Double Jeopardy Clause does not bar subsequent prosecutions by different sovereigns.   *Abbate v. United States*, 359 U.S. 187, 194 (1959) ("[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."); *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1360 (11th Cir. 1994); *United States v. Ferrell*, No. 1:17-cr-246-1-TCB-CMS, 2017 WL 6032947, at *2 (N.D. Ga. Dec. 6, 2017).   In other words, if a defendant has been tried and convicted by the state, her subsequent trial on the same charges by the federal government is not barred by the Double Jeopardy Clause.

For most of Stevens's arguments about double jeopardy, the inquiry ends here. Even if Stevens were charged in federal court with the same offenses she was in state court, the Double Jeopardy Clause does not preclude the federal government from prosecuting Stevens after her state convictions under the dual-sovereignty doctrine. Stevens's "popular sovereignty" argument—that she should not be prosecuted federally because the people's interest prosecuting her was vindicated in the state prosecution—is foreclosed by the Supreme Court's continued recognition of the validity of the dual-sovereignty doctrine. *See, e.g.*, *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1870-73 (2016); *United States v. Lara*, 541 U.S. 193 (2004).

There are limited exceptions to the dual-sovereignty doctrine. In *Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959), the Supreme Court indicated that a second prosecution by a different sovereign might be barred if the prosecuting sovereign could be said to be acting as a "tool" of the other, or where the second prosecution is "a sham and a cover" for the first. Relying on *Bartkus*, courts have recognized a "sham prosecution" exception, which applies when "one sovereign was so dominated, controlled, or manipulated by the actions of the other that it did not act of its own volition." *Baptista-Rodriguez*, 17 F.3d at 1361 (acknowledging that

9

courts have recognized such an exception, but not opining on its validity); *see also United States v. Lopez*, No. 1:16-cr-006-17-ELR-AJB, 2017 WL 907498, at *2-3 & n.2 (N.D. Ga. 2017).

There is no indication that either prosecution in this case was a "sham" prosecution. It does not appear that there was significant federal involvement in the state investigation. Nor does it appear that the state is controlling the federal prosecution. The government made the decision to charge Stevens based on its independent review of the information sent by the GBI and made the decision of its own volition, not at the request of the GBI.

Stevens also suggests that the government's decision to prosecute her violated its Petite policy, a department policy on dual and successive prosecutions. The Petite policy was developed by the Department of Justice "[i]n response to the [Supreme] Court's continuing sensitivity to the fairness of the multiple prosecution power." *Rinaldi v. United States*, 434 U.S. 22, 28 (1977). Under that policy, which is not constitutionally mandated but is a policy of self-restraint, *see id.* at 28-29, the government refrains from bringing a federal prosecution following a state prosecution for the same acts "unless the reasons are compelling," *United States v. Hyder*, 732 F.2d 841, 842 n.2 (11th Cir. 1984). For the Department of Justice to

approve a successive federal prosecution, there must be a substantial federal interest that was left unvindicated by the prior state prosecution. *See* Dep't of Justice, U.S. Attorneys' Manual § 9-2.031.

The Petite policy does not confer any enforceable rights on the defendant. *United States v. Beard*, 41 F.3d 1486, 1489-90 & n.11 (11th Cir. 1995); *see also United States v. Sandate*, 630 F.2d 326, 328 (5th Cir. 1980) ("The Court has held that a defendant may not use the Petite policy to invalidate an otherwise legitimate indictment."); *United States v. Nelligan*, 573 F.2d 251, 255 (5th Cir. 1978). Thus, Stevens's belief that the government did not follow the Petite policy in deciding to proceed with her prosecution provides no basis for dismissal of the indictment.

**B.     Stevens has not shown that the federal prosecution is a selective prosecution.**

Stevens argues that her federal prosecution is selective. The general rule is that, "as long as the prosecutor has probable cause to believe that an accused has committed an offense defined by statute, the decision whether or not to prosecute, and if so, what charge to bring before the grand jury, rests in the prosecutor's discretion." *United States v. Cole*, 755 F.2d 748, 758 (11th Cir. 1985) (citing *Bordenkircher v. Hayes*, 434 U.S. 357 (1978)); *see also United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006). Even so, there are constitutional constraints

11

on the prosecutor's discretion. *See Wayte v. United States*, 470 U.S. 598, 608 (1985). A selective prosecution occurs when the government makes a decision to prosecute that is deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *Id.*; *United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015). A defendant has a "demanding" burden in establishing a claim of selective prosecution. *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000). Absent evidence that the prosecutor's decision was "based on an overtly discriminatory classification," *see Wayte*, 470 U.S. at 608 n.10, the defendant must show both that the prosecutorial decision had a discriminatory effect—that is, that similarly situated individuals were not prosecuted—and that the decision was motivated by a discriminatory purpose, *see Smith*, 231 F.3d at 808. *See also United States v. Brown*, 862 F. Supp. 2d 1276, 1285 (N.D. Ala. 2012). To obtain a hearing on a selective prosecution claim, the defendant must present sufficient facts "to create a reasonable doubt about the constitutionality" of the prosecution. *Brantley*, 803 F.3d at 1271.

Here, Stevens does not contend that she was singled out for federal prosecution because of an impermissible factor. Rather, she contends, the government was motivated to prosecute her because it believed her state court

12

sentence was too lenient.  The Court is aware of no authority suggesting that the recipient of a lenient sentence is in a protected class for purposes of equal protection. Furthermore, Stevens has not identified with particularity a comparator.  She asserts that, during her GBI tenure, she was the only GBI agent to be re-prosecuted in federal court for receiving a lenient sentence, but she does not specifically identify any similarly situated defendant.  Thus, Stevens has not met her burden of showing the discriminatory effect of the prosecutorial decision and that the prosecutor acted with discriminatory purpose, and she therefore has not established a claim of selective prosecution.

> **C.    Stevens has not shown that the federal prosecution is a vindictive prosecution.**

Stevens also asserts that the federal prosecution is vindictive because the government decided to bring charges against her based on the lenient sentence she received in state court.  As stated above, the general rule is that the Court has no authority to interfere with a prosecutor's decision to prosecute, as long as the government has probable cause to believe that the defendant has committed a crime. When a prosecutor makes a charging decision to improperly punish a defendant for exercising a protected legal right, however, the defendant's right to due process is violated.  *United States v. Kendrick*, 682 F.3d 974, 981 (11th Cir. 2012).  For

example, there is a presumption of vindictiveness if the prosecutor seeks heightened charges after a defendant exercises his right to appeal and successfully appeals his conviction. *Barner*, 441 F.3d at 1315-16. The Eleventh Circuit has held, however, that there is no presumption of vindictiveness where the government brings a second indictment against a defendant after his acquittal on other charges. *Kendrick*, 682 F.3d at 983. Other circuits have reasoned that there is no presumption of vindictiveness in such a case because the government is "not levying punishment for a right exercised but rather for" the defendant's alleged crimes. *See United States v. Esposito*, 968 F.2d 300, 304 (3d Cir. 1992); *see also United States v. Johnson*, 171 F.3d 139, 141-42 (2d Cir. 1999) (citing *Esposito*); *United States v. Wall*, 37 F.3d 1443, 1449 (10th Cir. 1994) (same).

In the context of dual sovereigns, "federal courts repeatedly have rejected the idea that federal prosecution, after state proceedings, constitutes vindictive federal prosecution." *United States v. Raymer*, 941 F.2d 1031, 1041 (10th Cir. 1991); *accord id.* (collecting cases). Similarly, a court in this circuit declined to presume vindictiveness when a defendant was charged in federal court after he filed a successful motion to suppress in state court, and the state prosecutor entered a *nolle prosequi* in his state case. *United States v. Gilley*, 689 F. Supp. 1078, 1079,

14

1081 (N.D. Fla. 1988).  The court in *Gilley* reasoned, "Though there was close and open cooperation between the state and federal prosecuting authorities involved here, due to the absolute autonomy of the two sovereigns, there could not have arisen on these facts a realistic likelihood of vindictiveness." *Id.* at 1081.  Moreover, the court found that the federal prosecuting authorities appropriately considered the defendant's anticipated sentence in state court, which was lighter than his federal sentence would be, in deciding to initiate a federal prosecution.  *Id.* at 1082.

In *United States v. Gervasi*, 562 F. Supp. 632, 641 (N.D. Ill. 1983), the defendants were charged in federal court after state prosecutors received an adverse pre-trial ruling in a state case against the same defendants.  The defendants also presented some evidence that the state prosecutors were "judge-shopping" and wanted to deprive the defendants of certain state constitutional protections.  The court in *Gervasi* did not find that evidence probative of actual vindictiveness, concluding that the state officials' alleged vindictiveness was "legally irrelevant" to the defendants' vindictiveness claim because it did not show any actual vindictiveness on the part of federal prosecutors.  562 F. Supp. at 641.

Here, the Court finds no reason to presume vindictiveness.  Stevens asserts she is being punished for state court's sentencing decision.  The Court cannot see

15

how, by receiving a lenient sentence, Stevens exercised a legally protected right. Moreover, the government conducted a review of Stevens's case and did not bring charges against her at the behest of state prosecuting authorities, and it was permissible for the government to consider Stevens's lenient sentence from the state court in deciding to prosecute this case.  Thus, even if state prosecuting authorities were disappointed or upset with the result in state court, there is no evidence that any federal prosecutor acted with vindictiveness.   Stevens's vindictive prosecution claim is therefore without merit.

### D.    Stevens's remaining arguments

Stevens raises several additional arguments in her motion that the Court will address briefly.  First, she contends that the Court should dismiss the indictment because the conduct alleged in the indictment occurred while Stevens was suffering from mental health disorders caused by an abusive relationship.  [Doc. 18 at 18-19.]  Stevens also notes that, since her arrest, she has sought treatment for PTSD and other symptoms related to abuse.[4]  [*Id.* at 19.]  While it is commendable that

---

[4] Stevens does not suggest that there is a question of her mental competency to stand trial.  Nor does the Court find that, based on the information presented in the motion, that there is any doubt about Stevens's competency.  *See* 18 U.S.C. § 4241; *United States v. Wingo*, 789 F.3d 1226, 1235 (11th Cir. 2015).

Stevens sought and continues to participate in treatment for her mental health issues, there is no legal basis for the Court to dismiss the indictment based on the mental health history that Stevens describes in her motion and the circumstances of this case.

Stevens additionally argues that her federal prosecution is itself cruel and unusual punishment, in violation of the Eighth Amendment. A claim of cruel and unusual punishment is not ripe until the imposition, or immediately pending imposition, of a challenged punishment or fine. *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995); *see also United States v. Williams*, 6:13-cr-26-Orl-36TBS, 2014 WL 117091, at *5 (M.D. Fla. Jan. 13, 2014) (concluding that an Eighth Amendment challenge to a charged offense was not ripe where defendant had not yet pleaded guilty or been tried on the offense). Moreover, an indictment is only a charging document. It is not a punishment or fine, which might be subject to an Eighth Amendment challenge.

Stevens also states, in a wholly conclusory fashion, that the indictment is unconstitutionally overbroad and vague and that the indictment fails to state an offense. She does not supply any particular argument or explain the basis of those assertions, except to contend that the indictment fails to state an offense because

17

she was charged solely out of vindictiveness for her lenient sentence in state court. Because Stevens does not state those arguments with any particularly, the Court concludes that she has not shown that the indictment should be dismissed on those bases.  Moreover, even on the merits, those arguments were without merit.

The overbreadth doctrine refers to a situation where a law could be interpreted overbroadly and limit First Amendment expression.  *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *United States v. Waymer*, 55 F.3d 564, 569 (11th Cir. 1995).  Stevens has not explained what could be the basis of her overbreadth challenge to indictment, and the basis for that claim is not readily apparent.  That claim is therefore without merit.

"Void-for-vagueness challenges, absent a First Amendment [overbreadth] claim, are evaluated as applied to the facts of each case."  *United States v. Wetherald*, 636 F.3d 1315, 1326 (11th Cir. 2011); *see also United States v. Di Pietro*, 615 F.3d 1369, 1371-72 (11th Cir. 2010).  There is no summary judgment-like procedure in criminal cases; facts are not adduced until trial.  *United States v. Salman*, 378 F.3d 1266, 1268-69 (11th Cir. 2004); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).  Because the Court cannot consider Stevens's void-

18

for-vagueness claim as applied to the facts of the case, her void-for-vagueness claim is premature and provides no basis for dismissing the indictment.

But the Court may consider, at this stage in the proceedings, Stevens's assertion that the indictment fails to state an offense.  That claim, however, is without merit.   An indictment is constitutionally sufficient if it contains the elements of the offense charged and fairly informs the defendant of the charge which he must defend and enables him to plead double jeopardy in the event of a future prosecution for the same offense.  *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Pacchioli*, 718 F.3d 1294, 1307 (11th Cir. 2013).

To prove mail fraud, the government must show that the defendant (1) intentionally participated in a scheme to defraud and (2) used the mails to execute the fraudulent scheme.  *United States v. Hooshmand*, 931 F.2d 725, 731 (11th Cir. 1991); *see also United States v. Freeman*, 619 F.2d 1112, 1117 (5th Cir. 1980). Here, as to Counts One through Four, the indictment alleges that Stevens knowingly and intentionally devised a scheme to defraud by using her state-issued credit card to purchase items for her own personal benefit with state funds.  She caused merchants to mail the purchases through the U.S. Postal Service and a private interstate mail carrier to her home.  To conceal the scheme, she doctored

the receipts she provided to the GBI to make the purchases appear legitimately related to the work of the GBI.  The indictment alleges that Stevens's conduct violated 18 U.S.C. § 1341.  The Court readily concludes that the indictment contains the elements of the charged mail fraud offense, properly informs Stevens of the mail fraud charges, and enables her to plead double jeopardy in the future.

To prove federal program theft, the government must prove that the defendant was an agent of an organization, the organization received more than $10,000 from a federal grant program in one year, and the defendant embezzled, stole, obtained by fraud, or otherwise without authority knowingly converted or intentionally misapplied property valued at $5,000 or more that was under the organization's care, custody, or control.  18 U.S.C. § 666; *United States v. Williams*, 527 F.3d 1235, 1240 (11th Cir. 2008).  In Count Five, the indictment alleges that Stevens:

> being an agent of the [GBI], embezzled, stole, and obtained by fraud, at least $5,000 in money and property, under the care, custody, and control of the [GBI], a state agency that in the one-year period listed above received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidiary, loan, guarantee, insurance, and other form of Federal assistance, all in violation of Title 18, United States Code, Section 666(a)(1)(A).

The wording of Counts Six (which relates to the 2015 calendar year) and Seven (which relates to the 2016 calendar year, for thefts occurring until August 2016), is substantially similar.  The Court concludes that Counts Five through Seven contain the elements of the charged federal program theft offenses, properly inform Stevens of the charges, and allow her to plead double jeopardy in the future. In sum, the indictment properly states the charged offenses and is constitutionally sufficient.

## III.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the motion to dismiss be **DENIED**.  [Doc. 18.]

I have now addressed all referred pretrial matters and have not been advised of any impediments to the scheduling of a trial.   Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

IT IS SO RECOMMENDED this 28th day of August, 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge

21